## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY PANICHELLI,<br>                              Plaintiff,<br>vs.<br><br>SAFELITE AUTOGLASS, et al.<br>                              Defendants. | CIVIL ACTION<br><br>Case No.:  2:24-cv-01049 |

## MOTION OF DEFENDANT, FUYAO GLASS AMERICA INC., TO DISMISS AND/OR STRIKE PLAINTIFF'S COMPLAINT

Defendant Fuyao Glass America Inc. ("FGA"), by and through its attorneys, Marshall Dennehey, P.C., hereby moves to dismiss Plaintiff's Complaint, and/or strike portions of it, pursuant to Rule 12 of the Federal Rules of Civil Procedure.

This product liability action arises from a fatal motor vehicle accident involving Plaintiff's decedent, Cara Maria Panichelli.

Specifically, Plaintiff alleges that, on June 12, 2023, Plaintiff's decedent was operating her Subaru motor vehicle on Interstate 95 in Philadelphia, when a piece of metal crashed through the windshield and caused fatal blunt trauma to decedent's chest.  See Plaintiff's Complaint, attached hereto as Exhibit "A" at ¶¶ 16-19 and generally.  Plaintiff contends, inter alia, that decedent's death was caused by an allegedly defective replacement windshield that he claims was manufactured and distributed by FGA, and installed by the other defendants (collectively "Safelite").

FGA is an Ohio corporation with its principal place of business in Moraine, Ohio.  FGA is not registered to do business in Pennsylvania, and has no business locations here.  If FGA sold the subject replacement windshield to Safelite, as is alleged by Plaintiff, FGA did not ship that product into Pennsylvania.  Instead, Safelite or its shippers picked up the windshield from FGA's premises in Ohio, and then shipped it to Safelite's distribution centers in California or Georgia.  Once FGA sells a product to Safelite, FGA has no control over where Safelite ultimately ships it for sale to the ultimate consumer, and FGA had no hand in sending the subject windshield to Pennsylvania.

Under these facts, this Court lacks both general and specific personal jurisdiction over FGA in this matter, and Plaintiff's claims against FGA should be dismissed pursuant to F.R.C.P. 12(b)(2).

In the alternative, Plaintiff's request for punitive damages, and related allegations, should be stricken and dismissed from the Complaint.  Punitive damages are an extreme remedy available only in extraordinary matters.  The substantive allegations against FGA are general products liability claims, alleging that the subject windshield was unreasonably dangerous in its design, manufacture, and warnings.  Simply put, nothing in the Complaint suggests any "particularly egregious," quasi-criminal or reckless conduct on the part of FGA, and does not establish the necessary mindset to justify an imposition of punitive damages.

Plaintiff's claims for punitive damages, as well as unsupported references to "reckless" conduct, should be dismissed pursuant to F.R.C.P. 12(b)(6).

Finally, Plaintiff's Complaint contains an open-ended, placeholder allegation that FGA's alleged negligence includes "such other acts or omissions… as may appear during the course of discovery."  FGA is entitled to notice of the nature of the claims against it at the pleadings stage, not at the close of discovery.  Plaintiff should not be permitted to advance such an open-ended, uninformative allegation, nor should he be permitted an opportunity to evade the statute of limitations in this matter.  Paragraph 49(n) of the Complaint should be stricken and dismissed, or else Plaintiff should be required to provide a more definite statement of his claims, pursuant to F.R.C.P. 12(e).

In further support of its Motion, FGA relies on the accompanying Brief.

WHEREFORE, Defendant Fuyao Glass America Inc. respectfully requests that this Court grant its Motion to Dismiss, in accordance with the proposed Order attached hereto.

**MARSHALL DENNEHEY, P.C.**

By:  _/s/ Vlada Tasich_
     VLADA TASICH
     PA ID. 88679
     MICHAEL A. SALVATI
     PA ID. 311682
     Counsel for Defendant,
     Fuyao Glass America Inc.

     2000 Market Street, Suite 2300
     Philadelphia, PA  19103
     215-575-2600 (P)
     215-575-0856 (F)
     vxtasich@mdwcg.com
     masalvati@mdwcg.com

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ANTHONY PANICHELLI,<br>                            Plaintiff,<br>vs.<br><br>SAFELITE AUTOGLASS, et al.<br>                            Defendants. | CIVIL ACTION<br><br>Case No.:  2:24-cv-01049 |

**BRIEF IN SUPPORT OF THE**
**MOTION OF DEFENDANT, FUYAO GLASS AMERICA INC.,**
**TO DISMISS AND/OR STRIKE PLAINTIFF'S COMPLAINT**

## I.     FACTS

This product liability action arises from a fatal motor vehicle accident involving Plaintiff's decedent, Cara Maria Panichelli.  See Plaintiff's Complaint, attached hereto as Exhibit "A" at ¶¶ 16-19 and generally.

Specifically, Plaintiff alleges that, on June 12, 2023, Plaintiff's decedent was operating her Subaru motor vehicle on Interstate 95 in Philadelphia, when a piece of metal crashed through the windshield and caused fatal blunt trauma to decedent's chest.  Id.  Plaintiff contends, inter alia, that decedent's death was caused by an allegedly defective replacement windshield that was allegedly manufactured and distributed by FGA, and installed by the other defendants (collectively "Safelite").  See id. at ¶¶ 14-15, 19.

At all times relevant hereto, FGA has been an Ohio corporation with its principal place of business in Moraine, Ohio.  See Affidavit of Zhenhua (Allen)

Jiang, attached hereto as Exhibit "B," at ¶¶ 3-4; <u>see also</u> Articles of Incorporation, attached hereto as Exhibit "C."[1]  FGA has never had its principal place of business in Pennsylvania.  <u>See</u> Exhibit "B" at ¶ 5.  FGA has no business locations in Pennsylvania, and is not registered to do business in Pennsylvania – thus it has not consented to jurisdiction in Pennsylvania.  <u>See</u> <u>id.</u> at ¶¶ 6-7.

If FGA sold the subject replacement windshield to Safelite, as is alleged by Plaintiff, FGA did not ship that product into Pennsylvania.  <u>See</u> <u>id.</u> at ¶¶ 9-12.  Upon information and belief, Safelite or its shippers picked up this windshield from FGA's premises in Ohio.  <u>See</u> <u>id.</u> at ¶ 10.  (Like FGA, Safelite is headquartered in Ohio. <u>See</u> ECF Doc. No. 1 at ¶ 16.)  Further, at all times relevant, FGA's products were shipped to Safelite's distribution centers in California and Georgia, <u>not</u> Pennsylvania.  <u>See</u> <u>id.</u> at ¶¶ 11-12.  Once FGA sells a product to Safelite, FGA has no control over where Safelite ultimately ships it for sale to the ultimate consumer. <u>See</u> <u>id.</u> at ¶ 13.

In his Complaint, Plaintiff alleges that FGA acted with reckless disregard for the safety of others, and seeks an award of punitive damages.  <u>See</u> Exhibit "A" at ¶¶ 49-52 and *ad damnum* clause following Count II.

---

[1]  This document is publicly accessible on the Ohio Secretary of State's website: https://businesssearch.ohiosos.gov/

Finally, Plaintiff's Complaint also includes an open-ended placeholder claim, averring that FGA's alleged negligence included "Such other acts or omissions… as may appear during the course of discovery."  See id. at ¶ 49(n).

FGA now timely files the instant Motion to Dismiss to Plaintiff's Complaint.

## II.   LEGAL ARGUMENT

### A.   <u>This Court Lacks Personal Jurisdiction over FGA in This Case.</u>

*1.*   *<u>Jurisdictional principles</u>*

The issue of lack of personal jurisdiction is properly raised by way of Motion to Dismiss.  F.R.C.P. 12(b)(2).

"Federal courts in Pennsylvania may assert jurisdiction over a defendant to the extent that the defendant would be subject to jurisdiction in Pennsylvania state courts." <u>Orazi v. Hilton Hotels Corp.</u>, 2010 U.S. Dist. LEXIS 123472, *6 (E.D. Pa. 2010).  In Pennsylvania, the assertion of personal jurisdiction "over a non-resident defendant is dependent upon two requirements.   First, jurisdiction must be authorized by statute; and, second, the exercise of jurisdiction must comport with constitutional principles of due process."  <u>Graham v. Machinery Distribution, Inc.</u>, 599 A.2d 984, 985-86 (Pa. Super. 1991).  The Due Process Clause of the Fourteenth Amendment limits the exercise of personal jurisdiction over a defendant under the Long-Arm Statute by requiring that a plaintiff show that a defendant has "certain minimum contacts…such that the maintenance of the suit does not offend traditional

notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). In addition, a parallel inquiry is whether the defendant's contacts with the forum state are such that the defendant "should reasonably anticipate being haled into court" in that jurisdiction. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

The exercise of personal jurisdiction permitted by the Due Process Clause may be categorized as "general jurisdiction" or "specific jurisdiction," and depends on the nature and quality of the defendant's contacts with the forum state. See, e.g., Bristol-Myers Squibb Co. v. Superior Court, 137 S.Ct. 1773, 1779-80 (2017) (contrasting general and specific jurisdiction).

2.    *This Court lacks general purpose jurisdiction over FGA.*

"General" or "all purpose" jurisdiction permits a court to exercise jurisdiction over a defendant on any cause of action, whether or not that cause of action arose in the forum state. See Bristol-Myers Squibb, 137 S.Ct. at 1779-80;. For general jurisdiction to be appropriate, a defendant company must be "at home" in the forum state. Daimler AG v. Bauman, 571 U.S. 117, 137-39 (2014).

Although many earlier cases had focused on quantifying a defendant's business contacts with the proposed forum, the United States Supreme Court has rejected the argument that a defendant corporation could be subject to general jurisdiction simply because it "engages in a substantial, continuous, and systematic

course of business" in the forum state.  <u>See</u> <u>Daimler</u>, 134 S. Ct. at 760–761 (holding

that such a standard for general jurisdiction would be "unacceptably grasping").

As the Supreme Court explained in <u>Daimler</u>:

> <u>Goodyear</u> made clear that only a limited set of affiliations
> with a forum will render a defendant amenable to all-
> purpose jurisdiction there. 'For an individual, the
> paradigm forum for the exercise of general jurisdiction is
> the individual's domicile; for a corporation, it is an
> equivalent place, one in which the corporation is fairly
> regarded as at home.'  With respect to a corporation, the
> place of incorporation and principal place of business are
> 'paradig[m] . . . bases for general jurisdiction.'  Those
> affiliations have the virtue of being unique—that is, each
> ordinarily indicates only one place—as well as easily
> ascertainable….
>
> <u>Goodyear</u> did not hold that a corporation may be subject
> to general jurisdiction <u>only</u> in a forum where it is
> incorporated or has its principal place of business; it
> simply typed those places paradigm all-purpose forums.
> Plaintiffs would have us look beyond the exemplar bases
> <u>Goodyear</u> identified, and approve the exercise of general
> jurisdiction in every State in which a corporation 'engages
> in a substantial, continuous, and systematic course of
> business.'  That formulation, we hold, is unacceptably
> grasping.

<u>Daimler</u>, 134 S.Ct. 760-61 (citations omitted).

Rather, the general jurisdiction inquiry focuses on where a corporation is

"fairly regarded as at home," i.e. the corporation's state of incorporation and the state

where it maintains its principal place of business.  <u>See</u> <u>id.</u> at 761 ("Accordingly, the

inquiry under <u>Goodyear</u> is not whether a foreign corporation's in-forum contacts can

be said to be in some sense 'continuous and systematic,' it is whether that corporation's affiliations with the State are so continuous and systematic as to render it essentially at home in the forum State.") (internal quotations omitted). A corporation's principal place of business is its "nerve center," or headquarters, i.e., "the place where the corporation's high level officers direct, control, and coordinate the corporation's activities." Hertz Corp. v. Friend, 559 U.S. 77, 80-81 (2010).

The exercise of general jurisdiction is thus a simple analysis. FGA is an Ohio corporation. See Exhibit "B" at ¶ 3; see also Exhibit "C." Its principal place of business, at all relevant times, has been located in Moraine, Ohio. See Exhibit "B" at ¶¶ 4-5   Because Pennsylvania is neither the state of incorporation of FGA, nor the site of its principal place of business, FGA is not "at home" in this Commonwealth. See Daimler, supra.

Furthermore, consent does not afford an avenue to establish general jurisdiction as FGA is not registered to do business in the Commonwealth, and has not otherwise consented to jurisdiction. See, e.g., Mallory v. Norfolk Southern Railway Co., 143 S.Ct. 2028 (2023). Therefore, this Court may not exercise general jurisdiction over FGA.

3.   *This Court lacks specific personal jurisdiction over FGA.*

Because general jurisdiction is not appropriate, we must next turn to specific jurisdiction. "Specific," or "case-linked," jurisdiction depends on an affiliation

between the forum and the underlying controversy; in other words, the activity or occurrence that gives rise to the cause of action must take place in the forum state to be subject to the State's regulation.  <u>See</u> <u>Walden v. Fiore</u>, 134 S. Ct. 1115, 1121 n.6 (2014); <u>see</u> <u>also</u> <u>Bristol-Myers Squibb</u>, 137 S.Ct. at 1780.

Three requirements must be met before a Court may exercise specific jurisdiction over a defendant:

> First, the defendant must have "purposefully directed its activities" at the forum.  Second, the litigation must "arise out of or relate to" at least one of those activities.  And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise "comports with fair play and substantial justice."

<u>O'Connor v. Sandy Lane Hotel Co., Ltd.</u>, 496 F.3d 312, 317 (internal citations omitted).

Here, all three requirements are lacking.  FGA did not purposefully direct its activities toward Pennsylvania.   Indeed, FGA has no business locations in Pennsylvania, and is not even registered to do business in this Commonwealth, and so cannot be said to have "purposely availed itself of the privilege of conducting activities within" Pennsylvania.  <u>See</u> Exhibit "B" at ¶¶ 6-7, and 14; <u>see</u> <u>also</u> <u>O'Connor</u>, 496 F.3d at 317.  Instead, Plaintiff seeks to hold FGA responsible for a product it sold in Ohio.  <u>See</u> Exhibit "A" at ¶ 15; <u>see</u> <u>also</u> Exhibit "B" at ¶ 10.

FGA did not ship the subject replacement windshield into Pennsylvania. Upon information and belief, Safelite picked up the subject windshield from FGA's

facility in Ohio, and shipped it to one of Safelite's distribution centers in California or Georgia.  See id. at ¶¶ 9-12.  FGA did not direct or control where Safelite subsequently shipped, sold, or installed the subject windshield.  See id. at ¶ 13. Plaintiff's claims therefore do not arise out of or relate to any connection between FGA and Pennsylvania.

As to "traditional notions of fair play and substantial justice," this prong should not even be reached by the Court where the first two requirements cannot be established.  Even so, FGA is an Ohio corporation that has no business locations in Pennsylvania, and is not registered to do business in Pennsylvania.  See Exhibit "B" at ¶¶ 3-7, 15-16.  Relevant to this suit, FGA allegedly made and sold a windshield in Ohio that was subsequently shipped (by another party) to a distribution center in either California or Georgia.  See id. at ¶¶ 10-14.  Under these facts, FGA would not reasonably anticipate being haled into court in Pennsylvania.

This Court therefore may not exercise specific jurisdiction over FGA in this matter.

That Plaintiff resides in Pennsylvania does not changes the analysis.  The Supreme Court has made clear that the fact that the plaintiff resides in the forum state is insufficient to create specific jurisdiction.  See Walden, 134 S.Ct. at 1122 ("But the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with

the forum state that is the basis for its jurisdiction over him."); see also id. (holding that, for specific jurisdiction to arise, "our 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there," and that "the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State") (emphasis in original) (citation omitted).

In Walden, the Supreme Court declined to exercise specific jurisdiction over a Georgia-based DEA agent who had seized the gambling winnings of Nevada residents during a layover at an Atlanta airport. Id. at 1119.  Despite the fact that the defendant had harmed Nevada residents en route to Nevada, the Supreme Court unanimously found that the defendant lacked the necessary minimum contacts with Nevada necessary to give rise to specific personal jurisdiction.  See id. at 1122-23. As the Court explained, "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State."  Id. at 1123 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)); see also World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 298 (1980) ("But the mere unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State").   Because the defendant's case-related conduct

occurred in Georgia, the Court held that he had formed no "jurisdictionally relevant contacts with Nevada." Walden, 134 S.Ct. at 1124.

In this case, FGA has formed no "jurisdictionally relevant contacts" with Pennsylvania. Plaintiff seeks to hold FGA responsible for a product it made and sold in Ohio. As has already been established, FGA did not ship the subject windshield into Pennsylvania, or otherwise create any jurisdictional link between itself and this Commonwealth.

The fact that Plaintiff resides in Pennsylvania is of no moment. That fact is nothing more than the "random, fortuitous, attenuated" contact disregarded by the Supreme Court in Walden. Again, the specific jurisdiction analysis looks to the defendant's contacts with the forum State, not the plaintiff's. See Walden, 134 S.Ct. at 1122-23. Because Plaintiff's causes of action did not arise from this Defendant's contacts with Pennsylvania, but instead involve an Ohio company making and selling a product in Ohio, the Court lacks specific personal jurisdiction over FGA. See Walden, 134 S.Ct. at 1126 ("Petitioner's relevant conduct occurred entirely in Georgia, and the mere fact that his conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction.").

Nor does the fact that the windshield ended up in Pennsylvania create specific jurisdiction. In the wake of the Supreme Court's decisions in Walden and Bristol-

<u>Myers Squibb</u>, the stream-of-commerce theory is no longer a valid basis for personal

jurisdiction:

> The stream-of-commerce theory contends, essentially, that specific personal jurisdiction exists over a non-resident defendant when that defendant "has injected its goods into the forum state indirectly via the so-called stream of commerce," rendering it foreseeable that one of the defendant's goods could cause injury in the forum state.
>
> A plurality of Supreme Court Justices has twice rejected the stream-of-commerce theory, stating, in a manner consistent with our own case law, that plaintiffs must instead rely on "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  Indeed, the Supreme Court has recently held that "[t]he bare fact that [a non-resident defendant] contracted with a [resident] distributor is not enough to establish personal jurisdiction in the State."  We thus have no cause to revisit our Court's precedent on this issue, and we decline to adopt the [plaintiffs'] stream-of-commerce theory of specific personal jurisdiction.

<u>Shuker v. Smith & Nephew, PLC</u>, 885 F.3d 760, 780 (3d Cir. 2018) (internal

citations omitted); <u>see also</u> <u>Bielstein v. Signature Solar LLC</u>, 2024 WL 416712

(W.D. Pa. Feb. 5, 2024) ("Under United States Supreme Court and Third Circuit

precedent, the 'stream of commerce' theory for specific personal jurisdiction has

been rejected.").

Again, the critical inquiry is whether the defendant's contacts with the forum

state give rise to Plaintiff's cause of action.  <u>See</u> <u>Walden</u>, 571 U.S. at 284-85.  In this

case, where FGA sold a product in Ohio to an Ohio customer, there is simply is no such jurisdictional connection between FGA and Pennsylvania.

**B.**     **Plaintiff's Claims for Punitive Damages Should be Stricken and Dismissed as Unsupported and Insufficiently Pled.**

Plaintiff's Complaint alleges that FGA "consciously disregard a substantial risk," and that it acted with either "reckless indifference or willful disregard of the interests of others."  <u>See</u> Exhibit "A" at ¶¶ 49, 51-52, and generally.  On this basis, Plaintiff seeks an award of punitive damages.  <u>See</u> <u>id.</u> at Count II.

The factual allegations in Plaintiff's Complaint fail to demonstrate the requisite level of mental culpability on the part of FGA to support a punitive damages claim.  Plaintiff has therefore failed to plead a prima facie case for punitive damages.

Under Pennsylvania law, punitive damages are "an 'extreme remedy' available only in the most exceptional matters.'"  <u>Phillips v. Cricket Lighters</u>, 883 A.2d 439, 445 (Pa. 2005).  The function of punitive damages in Pennsylvania is to deter egregious behavior.  <u>See</u> <u>Martin v. Johns-Manville Corp.</u>, 494 A.2d 1088, 1097 (Pa. 1985).  A showing of negligence, "or even gross negligence, will not suffice to establish that punitive damages should be imposed."  <u>See</u> <u>Phillips</u> <u>supra</u>; <u>see also</u> <u>id.</u> at 446 (noting the standard for punitive damages is far higher than for negligence and is reserved only for conduct that is "particularly egregious").  Instead, punitive damages are only appropriate when the conduct at issue "involve[es] some element

of outrage similar to that usually found in crime." <u>See</u> RESTATEMENT (SECOND) OF TORTS §908 cmt. b. (1979); <u>see</u> <u>also</u> <u>Phillips</u>, 883 A.2d at 446.[2]

"[W]hen assessing the propriety of the imposition of punitive damages, 'the state of mind of the actor is vital.  The act, or failure to act, must be intentional, reckless, or malicious.'" <u>Hutchinson v. Luddy</u>, 870 A.2d 766, 770 (Pa. 2005) (emphasis added) (citations omitted).  Reckless conduct requires that the defendant "knows, or has reason to know, … of facts which create a high degree of risk of physical harm to another, and deliberately proceeds to act, or fail to act, in conscious disregard of, or indifference to, that risk." <u>Martin v. Johns-Manville</u>, 494 A.2d 1088, 1097 (Pa. 1985).  In the present case, Plaintiff's allegations concerning FGA's conduct do not begin to establish the type of especially egregious, outrageous, quasi-criminal conduct that shocks the conscience or establishes "evil motive or reckless indifference to the rights of others," which is required in order to warrant the

---

[2] FGA does not concede that Pennsylvania substantive law will apply to the claims against it in this matter.  As explained in its jurisdictional objection, FGA is an Ohio corporation whose relevant conduct occurred in Ohio.  If FGA is not dismissed for lack of personal jurisdiction, it reserves the right to argue that Ohio law will apply to this matter, including to Plaintiff's claims for punitive damages.  For purposes of this Motion, though, Ohio law sets a similarly exacting standard for punitive damages, requiring proof that the defendant's acts or omissions "demonstrate malice or aggravated or egregious fraud." <u>See</u> Ohio Revised Code 2315.21(C)(1).  Whether Pennsylvania law or Ohio law is applied to this issue, Plaintiff's Complaint does nothing to establish the requisite mental state on the part of FGA to justify such an extraordinary form of damages.

imposition of punitive damages.  <u>Martin</u>, 494 A.2d at 1096; <u>Phillips</u>, 883 A.2d at 445.

The substantive allegations against FGA are general products liability claims, alleging that the subject windshield was unreasonably dangerous in its design, manufacture, and warnings.  None of the averments described in the Complaint establish the necessary mental state to justify an imposition of punitive damages against FGA.  Simply put, nothing in the Complaint suggests any "particularly egregious," quasi-criminal or reckless conduct on the part of FGA, and does not establish the necessary mindset to justify an imposition of punitive damages.

Therefore, as Plaintiff's claims for punitive damages are insufficiently supported by the factual allegations asserted, such claims should be dismissed without prejudice against FGA as premature and legally insufficient under F.R.C.P. 12(b)(6).  <u>See</u>, <u>e.g.</u>, <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."); <u>see also</u> <u>Babenko v. Dillon</u>, 2019 WL 3548833 (E.D. Pa. Aug. 5, 2019) (dismissing allegations of recklessness and claims for punitive damages where the facts alleged in Plaintiff's Complaint arose to no worse than "mere negligence.").

14

**C.**   **Plaintiff's Open-Ended Placeholder Claim Should be Stricken as Insufficiently Specific**

The open-ended placeholder allegations set forth in paragraph 49(n) of the Complaint are insufficiently specific, as they fail to provide FGA with adequate notice of the claims against it.   Indeed, that paragraph as drafted suggests that Plaintiff will not articulate the claims against FGA until after discovery has already closed.

Federal Rule of Civil Procedure 12(e) states, in pertinent part, that "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." F.R.C.P. 12(e).  A motion for a more definite statement should be granted if a pleading is "unintelligible" or "virtually impossible for the opposing party to craft a responsive pleading." Miller v. Atl. Freight Sys., 2013 WL 1292907 (M.D. Pa. Mar. 28, 2013) (citing Morris v. Kesserling, 2010 WL 4362630 (M.D. Pa. Oct. 27, 2010)).   When presented with an appropriate 12(e) motion for a more definite statement, "a district court shall grant the motion and demand more specific factual allegations from the plaintiff concerning the conduct underlying the claims for relief." Thomas v. Indep. Twp., 463 F.3d 285, 301 (3d Cir. 2006).

While Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," the federal pleading standard demands more than an "unadorned, the defendant-

unlawfully-harmed-me accusation." <u>Ashcroft v. Iqbal</u>, 556 U.S. at 662, 678 (2009). Again, a pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." <u>Id.</u>  Nor does a complaint suffice if it tenders "'naked assertion[s]' devoid of 'further factual enhancement.'" <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 557).

The open-ended, catch-all, placeholder allegations in paragraph 49(n) of Plaintiff's Complaint fail to comply with these pleading requirements.  <u>See</u> Exhibit A.  In that paragraph, Plaintiff seeks to hold FGA liable for being otherwise culpable without any further detail.  <u>See</u> Exhibit A at ¶ 49(n).  Such language does not adequately inform FGA of the issues in the case, and leaves FGA to guess or speculate about the claims it must be prepared to defend.  Indeed, by referencing claims that "may appear during the course of discovery," Plaintiff seeks to turn the pleading rules on their head by articulating his allegations at the close of the case rather than the outset.

Moreover, this language has the ability to support the addition of new, unpled causes of action, even after the expiration of the statute of limitations.  FGA will be prejudiced if it is required to prepare and defend against each and every possible theory of liability that could be considered within the scope of these open-ended, unbounded placeholder allegations.  FGA will likewise be prejudiced if it is denied notice of the claims against it until after the close of discovery.

The open-ended, catch-all, placeholder averments in paragraph 49(n) of Plaintiff's Complaint do not identify the issues involved, and therefore, prejudice FGA in its effort to prepare a defense.  As pled, paragraph 49(n) of Plaintiff's Complaint is vague, open-ended, and unintelligible such that FGA cannot prepare a response to these paragraphs, and therefore prejudices FGA in its effort to prepare a defense.

As such, Plaintiff should be ordered to re-plead the above-referenced paragraph in his Complaint to clarify the allegations directed against Defendant such that FGA may prepare a responsive pleading.  As set forth in FGA's proposed Order, an Amended Complaint that simply omits paragraph 49(h) would also satisfy FGA's concern.

## III.    CONCLUSION

For the reasons set forth herein, FGA respectfully requests that this Honorable Court grant the instant Motion and dismiss the claims against FGA for lack of personal jurisdiction.  In the alternative, FGA respectfully requests that Plaintiff's claims for punitive damages, and Plaintiff's open-ended, placeholder allegation of negligence by stricken and dismissed.

Respectfully submitted,

**MARSHALL DENNEHEY, P.C.**

By: _/s/ Vlada Tasich_
      VLADA TASICH
      PA ID. 88679
      MICHAEL A. SALVATI
      PA ID. 311682
      Counsel for Defendant,
      Fuyao Glass America Inc.

      2000 Market Street, Suite 2300
      Philadelphia, PA  19103
      215-575-2600 (P)
      215-575-0856 (F)
      vxtasich@mdwcg.com
      masalvati@mdwcg.com

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY PANICHELLI,<br>                    Plaintiff,<br>vs.<br><br>SAFELITE AUTOGLASS, et al.<br>                    Defendants. | CIVIL ACTION<br><br>Case No.:  2:24-cv-01049 |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I did serve a true and correct copy of the attached Motion of Defendant, Fuyao Glass America Inc., to Dismiss and/or Strike Plaintiff's Complaint to all counsel of record, via the Court's electronic filing system, on March 18, 2024.

**MARSHALL DENNEHEY, P.C.**

By:   */s/ Vlada Tasich*
           VLADA TASICH
           PA ID. 88679
           MICHAEL A. SALVATI
           PA ID. 311682
           Counsel for Defendant,
           Fuyao Glass America Inc.
           2000 Market Street, Suite 2300
           Philadelphia, PA  19103
           215-575-2600 (P)
           215-575-0856 (F)
           vxtasich@mdwcg.com
           masalvati@mdwcg.com